# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**MAGNOLIA GARDEN CONDOMINIUMS, LLC**  **PLAINTFF**

**VERSUS**  **CIVIL ACTION NO. 1:07cv1257KS-MTP**

**THE CITY OF WAVELAND, MISSISSIPPI**  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#67]** filed on behalf of the defendant. The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion should be denied in part and granted in part. The court specifically finds as follows:

## FACTUAL BACKGROUND

Magnolia Garden Condominiums, LLC ("Magnolia") filed the present action against the City of Waveland on December 14, 2007, seeking a Declaratory Judgment, Preliminary and Permanent Injunctions, Damages, and Attorneys Fees, stemming from Waveland's purported refusal to grant Magnolia permission to build an 88-unit condominium development within the city limits (hereinafter referred to as the "Project").

The plaintiff contends that portions of the City zoning ordinance which govern

density of multi-family dwellings in R-3 areas are ambiguous and internally contradictory.  Thus, in anticipation of seeking approval for its Project, in summer 2007, Magnolia asked for a meeting with City officials to determine whether Magnolia's proposed project would be permissible.  The plaintiff alleges that at this meeting, after reviewing the plans, City officials informed Magnolia that, under their interpretation of the ordinance, Magnolia's 88 unit project would be permissible.  City officials also stated that the next step in the approval process would be to bring the project before the City's Board of Aldermen for approval and informed Magnolia representatives that they would see that the matter was placed on the agenda of the August 2007 board meeting.

There is a dispute as to whether the 88 unit project was or was not approved at the August 2007 meeting of the Board of Aldermen.  The minutes of the meeting are ambiguous.  Magnolia's position is that the Board voted to approve the 88 unit project and persons who were present at the meeting have provided affidavits to that effect.  Indeed, shortly after the meeting, the Mayor informed Magnolia's representative that the Board had voted to approve the project and, acting on the Mayor's instructions, Mr. Ron Calcagno, the City's Public Works Director, wrote Magnolia's lender, the Mississippi Home Corporation ("MHC"), to confirm that the Board had approved the project.  The plaintiff asserts that in reliance on this letter, Magnolia and MHC closed their financing and undertook the preliminary steps to commence the project.  Magnolia expended approximately $800,000 grading and filling the property, and applied for a construction permit after the financing was closed.

Public opposition arose after Magnolia began preparing for construction of the Project and, according to the plaintiff, the City changed its position.  Under the

allegations of the Complaint, the City now offers an interpretation of the density requirements of the zoning ordinance which is materially different from the interpretation which the City provided to Magnolia representatives during the summer 2007 meeting. Under the City's original interpretation of the ordinance as argued by the plaintiff, Magnolia's project is permissible while under the City's present interpretation of the ordinance, Magnolia's project is not.

Asserting that the Project had never been approved, the City placed the issue of Magnolia's building permit for the Project on the December 2007 Board Agenda. At that meeting, the plaintiff offered a modification of the Project by reducing it to 72 units. According to the plaintiff, this project was rejected as not in compliance with the density requirements of the City Zoning Ordinance, and by implication, so was the 88 unit project. As a result, Magnolia filed a bill of exceptions in state court and also filed this suit in federal court alleging that the density requirement of the ordinance is unconstitutionally vague and unenforceable; that the City applied the ordinance in such a fashion as to deprive Magnolia of due process and equal protection; and that the City's actions constitute an illegal taking of Magnolia's property without just compensation.

On February 1, 2008, Magnolia filed a Notice of Appeal to the Waveland Board of Adjustment, appealing the December 10, 2007, Building Inspection Department denial of a building permit for the proposed 88 unit development. In the alternative, Magnolia requested a variance or special exception in the event that the Board of Adjustment upheld the decision of the Waveland Building Inspection Department.

After providing notice to Magnolia and the public, the Waveland Board of

Adjustment conducted a public hearing as to Magnolia's Notice of Appeal on March 14, 2008. At the public hearing on its appeal, Magnolia was represented by counsel, who supplemented the record before the Board and argued on Magnolia's behalf.

On March 31, 2008, the Waveland Board of Adjustment issued its Administrative Findings, which affirmed, *in toto*, the Waveland Building Inspection Department's denial of a building permit for the proposed 88 unit development. Magnolia responded by filing a Second Supplementary Bill of Exceptions in state court on or about April 8, 2008. As of the filing of the present motion, Magnolia had not submitted a request for a specific variance or special exception to the City of Waveland and thus the City contends that Magnolia has not exhausted its administrative remedies available to it by the Waveland Zoning Ordinance and has not pursued its state court bill of exceptions.

Magnolia's Complaint seeks a declaratory judgment finding the zoning ordinance to be unconstitutional, preliminary and permanent injunctions, damages, and attorney fees. Specifically, Magnolia asserts the following grounds for liability: 1) taking of Magnolia's property without due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution; 2) denial of procedural due process in violation of the United States Constitution; 3) denial of the right to substantive due process in violation of the United States Constitution; 4) inverse condemnation in violation of the United States and Mississippi Constitutions and un-enumerated applicable statutes; 5) the alleged facial and/or as applied unconstitutional vagueness of Waveland's Zoning Ordinance; 6) denial of equal protection under the law; and 7) equitable estoppel.

The City previously moved to dismiss all of Magnolia's claims for failure to

exhaust administrative remedies or to stay. The City argued that this action should have been stayed based on: 1) Section 1004 of the Waveland Zoning Ordinance; 2) in the interest of judicial economy; and 3) abstention.  The court held that "it is abundantly clear that the court should not abstain from hearing this action or to stay it pending resolution of the state court proceedings.  There are no exceptional circumstances which warrant abstention or a stay."  Waveland has now moved for summary judgment.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is

not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants'

motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

### **Federal Taking Claim**

Waveland first attacks Magnolia's taking claim as not ripe for consideration in

federal court. In order to establish that a Fifth Amendment taking clam is ripe for consideration by a federal court, a plaintiff must demonstrate that it has sought and been denied compensation for the alleged taking through available state court procedures. This court has recognized that it is the denial of compensation, not the taking of property that implicates an aggrieved party's Constitutional rights. *See Herrington v. City of Pearl*, Miss., 908 F. Supp. 418, 422-24 (S.D. Miss. 1995).

As a general rule, a plaintiff who wishes to bring a "taking" claim (a claim in which the plaintiff contends that his or her property has been taken without just compensation) must first exhaust state remedies before asserting such a claim in federal court. In most so called "taking" cases, state remedies cannot be said to have been exhausted until just compensation has been denied. *Williams County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S. Ct. 3108, 3121, fn.13, 87 L.Ed.2d 126 (1985).

However, when a lawsuit is brought pursuant to 42 U.S.C.A. § 1983, it is necessary to determine which claims are "taking" claims, which require exhaustion in the absence of an exception, and which claims are not "taking" claims, which do not require exhaustion. Courts determine whether a claim is or is not a "taking" claim by examining the exact nature of the claims presented and the exact nature of the relief sought. *John Corp. v. City of Houston*, 214 F.3d 573 (5th Cir. 2000) (no exhaustion required where plaintiff asserted a substantive due process claim); *Miravete v. City of Laredo*, 02-46 (S.D. Tex 07/14/05), 2005 WL 1657034 (in determining whether plaintiff asserts a claim separate and distinct from a taking claim, the court should consider the issues presented and the type of relief sought and determine whether a favorable

judgment on the taking claim would resolve all issues and provide all requested relief, rendering the other claims superfluous).

The Fifth Circuit has developed jurisprudence involving property deprivation claims which are separate and distinct from takings claims such that exhaustion is not required. The court explained such distinct claims in *Simi Investment Company, Inc. v. Harris County, Texas*, 256 F.3d 323, 323-4 (5th Cir. 2001) (*Simi II*), certiorari denied 534 U.S. 1022 (2001):

> In the majority of cases involving landowner complaints, substantive due process is not the appropriate avenue of relief. Our Takings Clause jurisprudence cannot be circumvented by artful pleading of substantive due process claims. Except in rare cases of deprivations of property based on, for example, illegitimate and arbitrary governmental abuse, vague statutes, or retroactive statutes, the takings analysis established by the Supreme Court and this circuit should control constitutional violations involving property rights that have been infringed upon by governmental action. (footnotes omitted)

In the present case, Magnolia has asserted claims that it asserts fall within the "rare cases" exceptions listed in *Simi II* as claims that have been recognized as not requiring exhaustion. For example: Magnolia has alleged that the density requirements of the zoning ordinance are unconstitutionally vague; Magnolia has alleged a substantive due process violation; Magnolia has alleged procedural due process violations which present issues separate and distinct from Magnolia's taking claim; and Magnolia alleges that the City's new interpretation of its ordinances is being retroactively applied to an existing project. According to Magnolia, all of these claims require application of legal standards, and resolution of fact issues, which are separate and distinct from its taking claim.

As to the taking claim, Magnolia points out that there are two exceptions to the

exhaustion requirement.  State remedies do not have to be exhausted when those remedies are 1) futile or 2) inadequate.  *Williams , supra*.  Waveland argues that in order to exhaust state remedies, Magnolia must await an official decision which denies the requested compensation.

The bill of exceptions was filed in compliance with Miss. Code Ann. 11-51-75 on December 14, 2007, and no decision has been rendered.  Thus Magnolia contends the fact that it has taken over one year for the court to either deny or approve the compensation requested may be sufficient to render this appeals process inadequate. *Freelance Entertainment, LLC v. Sanders*, 280 F.Supp. 2d 533 (N.D. Miss. 2003) (applying First Amendment "prior restraint" analysis, court concluded that the zoning appeal process in question did not provide an adequate remedy due to the excessive delay involved).  However, Waveland points out that this is not a prior restraint on free speech case as in *Freelance Entertainment* and thus Magnolia's reliance on that case is inapposite.

Waveland also argues that Magnolia has abandoned or ignored state court review based on Mr. Stalland's (a principle member of the Magnolia LLC and 30(b)(6) representative) deposition testimony that he has not spoken with his attorney about the state court proceeding in some time.  Magnolia points out that this is not an identification of an absence of a genuine issue of a disputed material fact.  Stalland, in fact, stated that he defers to counsel in regard to the matter pending in state court.  He did not state that the proceeding has been abandoned.  According to Magnolia, the mere fact that the state docket does not show an annotation since April of 2008, does not prove that the proceeding has been abandoned.

The court concludes that Magnolia's taking claim is not ripe for adjudication in federal court. The mere fact that the state court has not yet acted is not evidence that the relief requested therein is inadequate or futile. Magnolia may not have abandoned the state court proceeding, but it appears from the record that it has been less than diligent in seeking to move that action forward. Therefore, the taking claims shall be dismissed as unripe pending resolution of the underlying state court action. However, the balance of Magnolia's claims are not subject to exhaustion and further, summary judgment is not appropriate as to any of the remaining claims.

**Procedural Due Process**

Procedural due process requires notice and an opportunity to be heard. *See Canfield Aviation, Inc. v. Nat'l Transp. Safety Bd.*, 854 F.2d 745, 750 (5th Cir. 1988); *Schafer v. City of New Orleans*, 743 F.2d 1086, 1089 (5th Cir. 1984) (stating that: "[t]he landowners have certainly received procedural due process. They had actual notice of the introduction of the ordinance, appeared at the hearing preceding its adoption, and availed themselves of the opportunity to argue against its adoption. This sufficed"). Waveland contends that the facts of this matter clearly show that Magnolia was afforded notice of each relevant meeting and/or public hearing conducted by the Waveland Board of Mayor and Aldermen, Planning and Zoning Commission and/or Board of Adjustment. Magnolia was represented by its designated representatives, shareholders, and/or counsel who were afforded an opportunity to be heard at each relevant meeting and/or hearing; thus, it was not deprived of any procedural due process rights.

Magnolia contends that its procedural due process rights have been violated by virtue of the fact that the only record available for judicial review is inaccurate. The minutes of the August 7, 2007, meeting reflect that Mr. Stalland was present. However, it is uncontradicted that he was in Minnesota on the date of the meeting. Furthermore, there is testimony from persons present at the meeting that the Magnolia Gardens project was approved, which is contrary to the minutes as they now appear. The official minutes of the August 2007 meeting have been contradicted by sworn testimony of eyewitnesses of what occurred at the meeting.

Magnolia argues that the practical effect of this inaccuracy is that any appeal to the state court pursuant to Miss. Code Ann. § 11-51-75 will necessarily be based on an inaccurate record. This inaccurate record is incapable of being corrected in Mississippi state court due to the nature of the state court's role as an appellate court, which is incapable of hearing testimony, while presiding pursuant to § 11-51-75.

This argument may be more of a substantive due process violation than a procedural one. However, with the number of contested facts involved surrounding the Board meeting and exactly what was approved, the court is not prepared to grant summary judgment on this issue.

**Substantive Due Process**

The Fifth Circuit has stated that municipal zoning actions comport with due process requirements so long as the questioned action is rationally related to a legitimate governmental interest and that there is no substantive due process violation when the issue is at least debatable. *See FM Properties Operating Co. v. City of*

*Austin*, 93 F.3d 167, 175 (5th Cir. 1996) (stating that: "[i]f the question is at least debatable, there is no substantive due process violation"); *Schafer*, 743 F.2d 1086, 1089 (stating that: "[t]he due process clause, in its substantive sense, requires only that the regulation be reasonably related to a valid governmental purpose").

The "Preamble and Enactment Clause" contained within Article I of the Waveland Zoning Regulations specifically states that the Ordinance is being enacted in support of, *inter alia*, the following purposes: lessening congestion in the streets, preventing the overcrowding of land, and avoiding undue concentration of population. The zoning decision that initiated Magnolia's Complaint is the decision of the Building Inspection Department that Magnolia's proposed 88 unit development did not comply with relevant density requirements. Waveland contends that this decision is clearly rationally related to the above-listed legitimate governmental interests. In the alternative, Waveland asserts that even if the rational relation is not clear, it is, at a minimum, debatable. For these reasons, Waveland claims that Magnolia cannot demonstrate that its substantive due process rights were violated.

In response, Magnolia states that the City's August 2007 approval of the proposed project, followed by its capricious subsequent rejection, amounts to a deprivation of due process. Magnolia argues that the defendant's motion for summary judgment misstates the government action in question. According to Magnolia, the decision that initiated Magnolia's complaint was not, as suggested by the defendant, the decision of the Building Inspection Department that the proposed development did not comply with density requirements, but the failure of the Building Inspection Department to issue a permit in accordance with the August 2007 ruling of the Board approving the

proposed development. Magnolia contends that this alleged capricious action is not rationally related to any governmental interest and genuine issues of material fact exist concerning what, if any, interest the government had in its retroactive application of the arguably vague zoning ordinance.

The court agrees with Magnolia. There remain too many contested issues of fact regarding the vagueness of the statute and its application by the City, especially in light of the apparent approval of the development then its recision.

**<u>Constitutional Vagueness of the Zoning Ordinance</u>**

"Plaintiffs confront a heavy burden in advancing a facial constitutional challenge to an ordinance." *Roark & Hardee, LP v. City of Austin*, 522 F.3d 533, 548 (5th Cir. 2008) (Emphasis added). Facial void for vagueness challenges are generally brought when laws have the potential to infringe upon constitutionally protected conduct, particularly conduct protected by the First Amendment. *Id.* at 547. When addressing a facially void for vagueness challenge, a court must first consider "whether the ordinance reaches a substantial amount of constitutionally protected conduct." *Id.* at 548. If an enactment does not implicate constitutionally protected conduct, "a court should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Id.*

The Fifth Circuit has recognized that when a law prohibits several forms of conduct, and it is difficult to determine whether some, but not all forms of conduct are prohibited, the ordinance is not impermissible in all of its applications. *See Home Depot, Inc.*, 773 F.2d at 628-29 (holding that law prohibiting the sale of, *inter alia*, "clothing or wearing apparel, lumber or building supply materials, furniture, home,

business, or office furnishings . . . ." on Sunday was not facially vague in all applications despite fact that some items may have been difficult to categorize under law because items such as shirts, pants, etc. obviously qualified as "clothing" under law, while items such as chairs obviously qualified as "furniture" under law).

Waveland argues that Magnolia's facial vagueness challenge appears to be based on its contention that a developer cannot determine the density requirements for condominiums under Waveland's Zoning Regulations. Waveland asserts that to the contrary, the Zoning Regulations at issue are clear in their terms, restrictions, and regulations and Magnolia can offer no support to show otherwise. Waveland continues that even if one were to assume that the Regulations are vague as to the density requirements for condominiums, they are not vague as to the density requirements for every permissible structure within the relevant zone.

Magnolia argues that the statute is vague in the first instance in its use of the term "multi-family dwellings" as applied to "low-rise" apartments. The second instance of vagueness argued by Magnolia is the allegedly blatant contradiction regarding the required density for low rise apartments constructed in an R-3 zone.

The court has reviewed these provisions and the competing affidavits of the parties. Based on the evidence now before the court, there appear to be genuine issues of material fact regarding this issue so as to preclude summary judgment.

**Equal Protection Claim**

Magnolia has made no allegation that it was discriminated against due to its inclusion in a protected class, thus Magnolia must demonstrate that relevant

-15-

governmental standards were applied differently in its case than in the case of others who were "similarly situated." *See Stuckey v. Miss. Dept. of Transp.*, No. 3:07CV639TSL-JCS, 2008 WL 1868421 (S.D. Miss. Apr. 24, 2008).

Magnolia has identified two specific developments located in Waveland which Magnolia's 30(b)(6) representative testified during a deposition that he believed were in the same zoning district as the Magnolia property and that both were developed under the current Waveland Zoning Regulations. However, according to the Affidavit of Steve Hand, furnished on behalf of Waveland, one of the developments listed by Magnolia is not within the same zoning district as the property proposed for development by Magnolia, while the other was developed under a previous version of the Waveland Zoning Regulations which contained different density requirements than the current version.

Magnolia argues that when the City approved the other 90 Unit condominium complex, it was applying the original interpretation of the current zoning ordinance and that this is the same interpretation which was applied at the August 7, 2007 Board meeting in which the Magnolia Gardens project was approved. Magnolia asserts that it was the subsequent interpretation of the R-3 density requirement which was applied in December 2007 when Magnolia's project was rejected. Magnolia contends that the defendant has offered no cognizable evidence to suggest that a different R-3 density requirement was in place when the 90 unit condominium complex was approved, even though Hand's affidavit states that "a different" set of zoning regulations was in effect. These "different" regulations have not been provided and, therefore, genuine issues of material fact still remain as to this claim.

**Equitable Estoppel**

Under Mississippi law, a municipality may act only through its official minutes. *See* Miss. Code Ann. § 21-15-17; *see also Sparks v. City of Booneville Miss.*, No. Civ. A. 1:99CV186-B-D, 2000 WL 33907672, at *4 (N.D. Miss. Aug. 17, 2000). Magnolia contends that Waveland is "equitably estopped from contending that the 88 unit development was not approved at the August 7, 2007 meeting and the City is equitably estopped from any attempt to rescind its approval of the 88 unit development." However, Waveland argues that Magnolia cannot dispute that the minutes from the August 7, 2007, meeting do not reflect any official action taken by the Board to approve anything related to Magnolia. Therefore, according to Waveland, equitable estoppel does not apply here.

There is a massive dispute as to what took place at the August 7, 2007, meeting and whether the original project was approved. The facts are also undisputed that a letter signed by Ron Calcagno, City of Waveland Public Works Director, was presented to the Mississippi Home Corporation on behalf of Magnolia. The purpose of the letter was to assure Mississippi Home Corporation that the Magnolia Garden Condominium project was approved on August 7, 2007, thereby allowing Magnolia to obtain financing for the project. The letter was issued by way of a request from Magnolia to the Mayor who apparently instructed Calcagno to write it. Magnolia obviously relied on the letter when it obtained financing and spent a large sum of money preparing the site for construction prior to the plug being jerked on the project by the City.

Thus, considering the asserted inaccuracy of the minutes of the August 7, 2007 meeting, and the evidence of Magnolia's detrimental reliance on the written assurances

of a Public Works Director, genuine issues of material fact exist concerning whether or not the defendant should be estopped from revoking its approval of the proposed project.

The remaining issues of whether Magnolia is entitled to an injunction and its damages are intertwined in the factual disputes outlined above.  Summary judgment on these remaining issues shall also be denied.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#67]** filed on behalf of the defendant is granted in part and the federal taking claim of the plaintiff is dismissed and that the motion is denied as to the remaining claims.

SO ORDERED AND ADJUDGED this the 10th day of February, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE